UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THEODORE EBEYER and BRITNEE EBEYER, | ) | |
|     *Plaintiffs,* | ) | |
| | ) | |
| *vs.* | ) | 1:08-cv-01109-JMS-DKL |
| | ) | |
| JOSEPH RODRIGUEZ, JEFFREY MCCORCKLE, | ) | |
| MATTHEW FILLENWARTH, and RICHARD | ) | |
| KELLY, individually and in the official | ) | |
| capacity of each as a law enforcement of the | ) | |
| Greenwood City Police Department, Johnson | ) | |
| County, Indiana, | ) | |
|     *Defendants.* | ) | |

## ORDER

Presently pending before the Court is Defendants' Motion for Partial Summary Judgment, [dkt. 78], which the Court **GRANTS in part and DENIES in part** for the reasons that follow.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would conclude in the moving party's favor. *See* Fed. R. Civ. Pro. 56. To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. Fed. R. Civ. Pro. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

As the current version Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Pro.

56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. Pro. 56(c)(1)(B).  Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. Pro. 56(c)(4).   Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment.  Fed. R. Civ. Pro. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Pro. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson v. Cambridge Indus.*, 325 F.3d 892, 898 (7th Cir. 2003).  Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment.  *Id.* at 901.

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims or a defendant's affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact.  *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999).  And when evaluating this inquiry, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial . . . against the moving party." *Celotex*, 477 U.S. at 330.  A movant should not argue any fact to support its motion that is contested by admissible evidence.

## II.
### BACKGROUND

2

The facts supported by admissible evidence and viewed in the light most favorable to the non-moving parties, Plaintiffs Theodore Ebeyer and Britnee Ebeyer, though not objectively established as true, are as follows:   On August 16, 2006, seventeen-year-old Britnee was approached by Defendant Greenwood Police Department ("GPD") Officer Joseph Rodriguez and two other officers as she sat in a vehicle with a friend, Ryan Huffman. [Dkt. 21-1 at ¶6; dkt. 79 at 3.]   During that stop, drugs and alcohol were found on Mr. Huffman, and he was arrested. [Dkt. 79 at 3.]   Britnee was not arrested, but Officer Rodriguez informed her he had ample evidence to arrest her but that he would not do so if she agreed to accompany him for a ride. [Dkt. 21-1 at ¶9.]   Britnee agreed to go on a ride in Officer Rodriguez's unmarked police vehicle. [*Id*.]

Officer Rodriguez drove Britnee around for approximately three hours.   [Dkt. 21-1 at ¶10.]   During the ride, Officer Rodriguez told Britnee about her father Theodore Ebeyer's illegal drug activities.   [Dkt. 21-1 at ¶11.]   Specifically, he said that Mr. Ebeyer was a known drug dealer and that he and other members of his family used various family businesses as "fronts" for illegal activities.   [*Id*.]   Officer Rodriguez also told Britnee that he and certain GPD officers were out to "get" her father for critical statements he caused to be published regarding the GPD.   [Dkt. 21-1 at ¶12.]   Officer Rodriguez told Britnee the plan was to "set up [her] father and trick him into thinking we were buying drugs for Ryan Huffman."   [Dkt. 89-1 at 10.]   Britnee agreed to work for Officer Rodriguez in a secret and undercover capacity to help the GPD to conduct a sting against Mr. Ebeyer.   [*See* dkt. 21-1 at ¶14; dkt. 79 at 4.]   At or near the end of the ride, Officer Rodriguez parked his unmarked police vehicle in an isolated part of the GPD parking lot. [Dkt. 21-1 at ¶15.]   In the parking lot "[Officer Rodriguez] engaged . . . [Britnee] in an unwelcomed, uninvited, unwanted sex act . . ." [Dkt. 21-1 at ¶17.]   Officer Rodriguez pulled his

penis out of his pants, put his gun in his lap, and told Britnee that he "wanted [her] to touch his gun." [Dkt. 89-1 at 8.] He then made her put her mouth on his penis, and as she did that, he lifted her skirt, rubbed her back, and put his hands down her pants. [*Id*.] The incident lasted at least ten minutes, after which Officer Rodriguez put his penis back in his pants and drove Britnee home from the GPD parking lot. [*Id*., dkt.s 79 at 5; 21-1 at ¶17.][1] As he drove, Britnee cried, and Officer Rodriguez told her that she "needed to stop crying and if [she] ever opened [her] mouth, that he would fuck [her] over …, and he had so much dirt on [her] that he would make sure [she] would never see the light of day." [Dkt. 89-1 at 8-9.] Officer Rodriguez did not drive Britnee directly to her home, but instead drove "like he didn't know where he was going." [*Id*. at 8.]

At the Ebeyer home, Officer Rodriguez engaged Mr. Ebeyer in a conversation regarding Britnee's agreement to do undercover work, where Officer Rodriguez assured him that Britnee "was not in any trouble" but that the GPD would need her to cooperate in a drug investigation against her friend, Ryan Huffman. [Dkt. 21-1 at ¶20.] After Officer Rodriguez left, Britnee told her father that he threatened to arrest her if she did not help him to set up her friend, Ryan Huffman, on a heroin transaction. [Dkt. 21-1 at ¶21.]

On August 17, 2006 Britnee received a phone call from law enforcement explaining when and where she would be receiving the drugs in order to set up her friend. [Dkt. 21-1 ¶22.] Britnee told her father about the call. [*Id*.] Before the drug pick up and without Theodore Ebeyer present, Britnee was outfitted with a wire. [Dkt. 79 at 8.] Mr. Ebeyer drove Britnee to

---

[1] The Court is well aware that Officer Rodriguez vehemently contests the foregoing facts. The facts, are, however, contained in sworn testimony submitted by Britnee, and are thus admissible. The Court in no way vouches for their credibility by including them, but is simply following the applicable standard of review, presenting the admissible evidence in the light most favorable to the non-movant.

the pickup site.  [Dkt. 21 at ¶22.]  Britnee completed the cocaine purchase under constant police visual and video surveillance.  [Dkt. 79 at 8.]  After leaving the pickup site, Mr. Ebeyer was pulled over by Defendant  Richard Kelly.  [Dkt. 21-1 at ¶25.]  During the stop, Mr. Ebeyer told Britnee to put the drugs into her jeans.  [Dkt. 21-1 at ¶28.]  As a part of the stop, Britnee was searched and the drugs were discovered.  [Dkt. 21-1 at ¶29.]

At the scene of the stop, Mr. Ebeyer was arrested and charged with Possession, Neglect of a Dependent and Dealing in Cocaine.  [Dkt. 21-1 at ¶31.]  Plaintiff Britnee was not arrested or charged with any crime.  [Dkt. ¶33.]  On March 5, 2008 each of the three charges against Theodore were dismissed by the Johnson County prosecutor.  [Dkt. 21-1 at ¶34.]  One of those charges was refiled, with the only remaining charge being Possession of Cocaine.  [Dkt. 79 at 10.]  Mr. Ebeyer was convicted on the Possession charge, which was subsequently affirmed by the Indiana Court of Appeals and the Indiana Supreme Court.  *Id*.

### III.
#### DISCUSSION

Mr. Ebeyer and his daughter, Britnee Ebeyer have brought claims against four GPD s, Joseph Rodriguez, Jeffrey McCorkle, Matthew Fillenwarth and Richard Kelly in their individual capacities under 42 U.S.C. § 1983.  Britnee alleges a Fourth Amendment unlawful seizure claim and a state-law claim of battery. [2]  Mr. Ebeyer alleges violations of his Fourth Amendment right against unreasonable searches and seizures, his First Amendment rights, his right to due process afforded by the Fourteenth Amendment.  The Court will consider each Plaintiff's claims in turn.

---

[2]  In her response, Ms. Ebeyer abandoned her First Amendment claims.  [Dkt. 89 at 17.] Accordingly, the Court grants summary judgment for Defendants on that claim.

### A.  Britnee Ebeyer's Claims

Britnee alleges Officer Rodriguez's contact with her constituted an unlawful seizure within the meaning of the Fourth Amendment because Officer Rodriguez detained Britnee in his unmarked police cruiser by use of a coercive threat to arrest her[3] and because Officer Rodriguez "engaged [Britnee] in a coerced, non-consensual sex act."  [*See* dkt. 21-1 at 4.]  Defendants argue four grounds for summary judgment. First, defendants argue summary judgment is warranted as to (s) McCorkle, Fillenwarth, and Kelly because there is no allegation that any of the officers participated in any way in Britnee Ebeyer's alleged unlawful seizure.   Second, defendants argue summary judgment is warranted because Britnee's account of the alleged battery is so contrary to the record no reasonable jury could find for the Plaintiffs.   Third, summary judgment should be granted because even if a jury believed Britnee, there is no evidence she was seized within the meaning of the Fourth Amendment.   Finally, Defendants argue summary judgment is warranted because Britnee's claim is improper under the Fourth Amendment.  Each argument will be addressed in turn.

### 1.   Unlawful Seizure

#### a.   Personal Responsibility Requirement

To be held individually liable, a defendant must be personally responsible for the deprivation of a constitutional right.  *See Chavez v. Ill. State Police,* 251 F.3d 612, 651 (7th Cir. 2001) (citation omitted) (explaining § 1983 liability in the context of a superior liability claim).

---

[3] Plaintiffs allege "[Officer Rodriguez told] Britnee that he had ample evidence to arrest her... but said he would not arrest her if she would get into his unmarked police vehicle and accompany him for a 'ride.' As a result ... [Britnee] acquiesced in and to Defendant Rodriguez's request ...." [*See* Dkt. 21-1 at 3.]

A defendant will be deemed to have sufficient responsibility where he directed the conduct or if the conduct occurred with his knowledge or consent.  [*Id.* at 652.]

Here, the Plaintiffs cite no facts in the complaint to assert that the other officers were in anyway involved with the alleged seizure of Britnee Ebeyer.  [*See* dkt. 21-1 at 8-19.]  Likewise, Britnee Ebeyer's deposition provides no facts to support that the other named officers were either directly involved or complicit in Britnee's alleged coerced entry into Officer Rodriguez's car or his later coerced sex act.  [*See* dkt. 81 at 8 (where Plaintiff only briefly mentions that two other unnamed officers were also in the church parking lot while she sat in the car with Officer Rodriguez); *see also* dkt. 81 at 10 (where there no mention of any of the other named Defendants' presence during the alleged coerced sex act).]   As this Seventh Circuit has recognized, district courts are not required to scour every inch of the record for evidence potentially relevant to the summary judgment motion.  *Johnson*, 325 F.3d at 898.  For these reasons the Court finds that Plaintiff has failed to allege sufficient facts that Officers McCorkle, Fillenwarth and Kelly were responsible for Britnee's alleged constitutional deprivation. The Court grants summary judgment as to these Defendants on the illegal seizure claim.

### b.  Alleged Seizure and Qualified Immunity

The Fourth Amendment to the Constitution protects citizens "against unreasonable searches and seizures."  U.S. Const. Amend. IV.  A Fourth Amendment seizure does not require a formal arrest; rather, an seizure requires an "intentional acquisition of physical control." *Brower*, 489 U.S. 593, 595-596 (1989).  *See Brower v. County of Inyo*, 489 U.S. 593, 595 (1989). Thus, to survive a motion for summary judgment, Plaintiffs must allege sufficient facts to show that Officer Rodriguez took actions designed for the purpose of detaining Britnee Ebeyer.

In their response brief, Defendants have raised the defense of qualified immunity. Qualified immunity protects governmental officials performing discretionary functions from liability for civil damages if their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Formigoni*, 42 F.3d 1060, 1064 (7th Cir. 1994). This principle applies to law enforcement officers who act reasonably but are mistaken. *Hunter v. Bryant*, 502 U.S. 224, 227.

In determining whether an officer is entitled to qualified immunity, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). If no constitutional right has been violated, that is the end of the qualified immunity analysis. *Id*. at 201. If a violation could be made out on the facts taken in the light most favorable to the plaintiff, the next step "is to ask whether the right was clearly established," namely, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 201-02.

Here, Britnee has satisfied that burden. She attests that Officer Rodriguez used a threat of arrest as a coercive tool to get her into his car. [Dkt. 89-5 at 2.] She further attests that Officer Rodriguez "grabbed [her] and removed [her] from the other officer's vehicle" and that "she never felt she was free to leave." [*Id*.] Coupled with her deposition testimony that Officer Rodriguez put his gun on his lap during the alleged unlawful detention, asked whether she liked guns, and then made her put her mouth on his penis [dkt. 89-1 at 8], the Court therefore finds Britnee's testimony creates genuine issues of material fact exist concerning the nature of her detention that would support both that a seizure occurred and that no reasonable officer would believe that such a seizure was lawful. Accordingly, a finding of qualified immunity is precluded, and the Court will not grant summary judgment on that ground.

### c. Britnee's Credibility

Defendants allege as an alternative basis for summary judgment that no reasonable jury could find for the Plaintiff because Britnee's account of the ride with Officer Rodriguez is blatantly contradicted by the record.  [*See* dkt. 79 at 14.]  As a result they argue that the Court should not adopt the plaintiff's version for the purpose of granting summary judgment.  To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial.  *See Celotex Corp.,* 477 U.S. at 323.  There is no material issue of fact where the record as a whole could not lead a rational trier of fact to find for the non-moving party.  *See Scott v. Harris*, 550 U.S. 372, 379 (2007). Generally, when considering a motion for summary judgment the facts must be viewed in the light most favorable to the nonmoving party, [Fed. Rule Civ. Proc. 56(c)], but the Supreme Court has explained that when there are two differing accounts and one is blatantly contracted by the record, the Court should not adopt that version of facts.  *See Scott*, 550 U.S. at 380.

In support of their motion, Defendants challenge Britnee Ebeyer's timeline of her ride in Officer Rodriguez's patrol car.  Defendants point out that Britnee Ebeyer's account of the ride estimates that she and Officer Rodriguez were in the car for approximately three hours after leaving the church parking lot.  [*See* dkt. 89-1 at 9.]  Defendants argue that this account is blatantly contradicted by the dispatch records which show the ride lasted no more than 36 minutes after leaving the church parking lot.  [Dkt. 79 at 15.]  Further, dispatch records show only 16 minutes passed between the Officer's arrival at the GPD and the time when Britnee returned home. [Dkt. 79 at 16.]  This discrepancy, the defendants argue, shows that there was no way Officer Rodriguez had the time to commit battery against Britnee.[4]  The Court understands

---

[4] Britnee claims the battery lasted for at least 10 minutes.  [*See* dkt. 81 at 10.]

Defendants to be arguing the Court should adopt their version of the facts and grant summary judgment because no question of fact remains as to whether the battery occurred as Britnee claims it did.[5]

The Court rejects the argument that a discrepancy in the time is determinative of a motion for summary judgment because the timeline is collateral to the critical issue of fact in this case: whether the alleged forced sex act occurred.  Defendants have not provided the Court with evidence that clearly refutes Britnee's assertion that the battery occurred.  Rather, Defendants have presented only evidence that merely supports the contention that it is *unlikely* the battery could have occurred given the narrow time frame.[6]  Essentially the defendants ask this Court to make two credibility judgments in its motion:  first, to conclude based on the dispatch records that Britnee's timeline is inaccurate,[7] and second, to infer from that conclusion that Britnee's account of the alleged battery must also be inaccurate.  But the Court's role in ruling on a motion for summary judgment is to draw inferences in favor of the non-movant, not the movant.  *See Schacht*, 175 F.3d at 504 (the key inquiry is only whether admissible exists to support Plaintiff's

---

[5] Britnee describes the battery as an "unwelcomed, uninvited, and unwanted sex act …."  [*See* dkt. 21-1 at 4.]

[6] [*See* dkt. 79 at 16 (Defendants explain summary judgment is warranted because "[t]he facts [surrounding the timeline] alleged by Britnee are so contrary to the evidence, that they cannot be believed.  Therefore, her entire testimony about the events that purportedly occurred at GPD station should be disregarded."]

[7] Here, the Court does not find the dispatch records themselves to be uncontroverted evidence even as to the timeline because the dispatch records are reliant on human data input, which is always subject to human error. Likewise, Britnee's memory regarding the timeline is also subject to human error. That the records are powerful evidence is not the inquiry here. The dispatch records stand in contrast to the undisputed video evidence in *Scott*, which directly contradicted the defendant's claim that the pursuing officer's defensive move during a high speed chase was unreasonable. There, the Court found the video evidence showed clearly the officer reasonably responded to the defendant's dangerous driving maneuvers and thus was entitled to summary judgment based on qualified immunity.  *See Scott v. Harris*, 550 U.S. 372, 386 (2007).

claims not to engage in weight or credibility assessments). Here, Britnee's accusation alone is admissible evidence to support her claim and the standard for summary judgment is not satisfied. Whether it is to be credited is a decision for the jury. Accordingly, the motion for summary judgment is denied.

### d. The Propriety of Alleging the Claim under the Fourth Amendment

In the alternative, Defendants argue Britnee's claim is improper under the Fourth Amendment because the alleged battery did not occur during the course of an attempted arrest or apprehension of a suspect involved in criminal conduct. [Dkt. 79 at 18.] At least one Circuit has recognized that in the context of seizure by use of excessive force claims, harm that is not inflicted during the course of an arrest or apprehension of a suspect is properly analyzed as a violation of substantive due process rights under the Fourteenth Amendment, not under the Fourth Amendment. *See Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997); *see also Wragg v. Thornton*, 604 F.3d 464 (7th Cir. 2010) (where the Court analyzed alleged molestation committed in the defendant's capacity as a fire chief as a substantive due process claim).

But Britnee does not make a claim of unlawful seizure by use of excessive force. Rather, Britnee brings a claim only for unlawful seizure. [Dkt. 21-1 at 7.] In this context, the Supreme Court has explained that an unlawful seizure requires an "intentional acquisition of physical control" and that even an unintended person can be the object of the taking. *See Brower*, 489 U.S. at 595-596. Thus, a claim of unlawful seizure can be sustained even when not in the context of an arrest or during the apprehension of a suspect. Furthermore, Fourth Amendment reasonableness "depends not only on when a seizure is made, but also how it is carried out," *Tennessee v. Garner*, 471 U.S. 1, 8 (1985), and threatening prosecution to coerce victims into

sex acts is objectively unreasonable.  *See Arias v. Allegretti*, 2008 U.S. Dist. LEXIS 4352, *8-9 (N.D. Ill. 2008) ("Allegretti's use of his authority as a police officer and the threat of prosecution to coerce (or attempt to coerce) plaintiffs to expose themselves and engage in sexual acts unwillingly, if true, was objectively unreasonable and would violate the Fourth Amendment"). For these reasons, the Court rejects Defendants' argument that this claim was improperly brought as a Fourth Amendment violation.  Summary judgment on this ground is denied.

### 2.  State-Law Battery Claim

Britnee Ebeyer also alleges a state-law claim of battery against Officer Rodriguez.[8] Defendants claim that Britnee's battery claim is barred because she failed to comply with the procedural requirement of the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-8.  [Dkt. 79 at 21.]

Under the ITCA, a plaintiff must file a Tort Claim Notice against the appropriate political subdivision when filing state law tort claims against a governmental authority in his individual capacity if the act or omission causing the plaintiff's loss is within the scope of the defendant's employment.  *Bienz v. Bloom*, 674 N.E.2d 998, 1004 (Ind. Ct. App. 1996).  Britnee alleges that because the alleged battery by Officer Rodriguez was committed outside the scope of his employment, she need not comply with the ITCA.  [Dkt. 89 at 17.]

Under Indiana law, "[a]n employee is acting within the scope of his employment when he is acting, at least in part, to further the interests of his employer."  *City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind. Ct. App. 1999).  Although Officer Rodriguez attempts to analogize this case to *Southport Little Leauge v. Vaughan*, 734 N.E.2d 261, 268 (Ind. Ct. App. 2000),

---

[8] Britnee only alleges that a battery was committed by Officer Rodriguez.  [Dkt. 21-1 at 8.] Therefore, applying the same logic as in the above discussion of § Britnee's 1983 claims, summary judgment is likewise granted to Officers McCorkle, Fillenwarth and Kelly on Britnee's state-law battery claim.

where an equipment manager authorized to fit boys with athletic uniforms viewed their genitalia for his own gratification, the Court finds that case distinguishable from the present situation as the act of oral sex is not incidental to any authority or responsibility given to Officer Rodriguez. Viewing the facts in the light most favorable to Britnee, *Celotex Corp.,* 477 U.S. at 323, the Court finds that the alleged act did not occur within the scope of Officer Rodriguez's employment and, accordingly, her claim is not barred by any failure to comply with the ITCA.

Defendants make much of the fact that Plaintiffs allege in their Complaint that Officer Rodriguez "at all relevant times … were acting under color of state law," [dkt. 21-1 at 2], and argue that Plaintiffs contradict themselves in claiming that Officer Rodriguez acted outside the scope of his employment.  [Dkt. 94 at 9-10.]  However, as defined by Indiana law, acting outside the scope of one's employment is not mutually exclusive with acting under color of state law. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1118-19 (7th Cir. 1995) (rejecting the notion that because a police officer was off-duty and acting solely to serve the interest of a private entity and not his government employer, he could not have acted under color of state law).  Because a finding that Officer Rodriguez acted under color of state law may be compatible with a finding that he acted outside the course and scope of his employment, his motion for summary on that ground is therefore denied.

### B.  Ted Ebeyer's Claims

Mr. Ebeyer asserts § 1983 claims for alleged violations of the First, Fourth and Fourteenth Amendments.  The Court will consider each of his claims in turn.

### 1.  First Amendment Claim

Mr. Ebeyer first alleges that Defendants violated his First Amendment rights by arresting him in alleged retaliation for voicing complaints about members of the Greenwood City Police

Department.  Mr. Ebeyer claims that because the speech related to a matter of public concern, it is protected under the First Amendment. [Dkt. 89 at 19.]  Defendants argue in response that Mr. Ebeyer suffered no deprivation under the First Amendment because his arrest was for cocaine possession, not for his speech, and that he is barred from challenging the validity of his conviction for that offense.  [Dkts. 79 at 28; 94 at 16.]

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. Amend. IV.

As Defendants correctly point out, Mr. Ebeyer's claim challenging the validity and motives behind his arrest is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-487 (1994).  In *Heck*, the Supreme Court of the United States held that a convicted criminal may not bring a civil suit questioning the validity of his conviction unless that conviction has been reversed, expunged, or otherwise declared invalid.  *Id*. at 486-487.

Here, Mr. Ebeyer claims that "unlawfully punished for [his speech] when he was arrested in retaliation for exercising that right," [dkt. 89 at 19].  It is undisputed however, that Mr. Ebeyer's has not been overturned, but instead was upheld by the Indiana Court of Appeals and denied transfer to Indiana Supreme Court.  Although Mr. Ebeyer contends that he is not challenging the validity of his arrest and conviction, [dkt. 89 at 19], as the Seventh Circuit has explained, it is "irrelevant" whether Mr. Ebeyer disclaims any intention of challenging his own conviction; "if he makes allegations that are inconsistent with the convictions' having been valid, *Heck* kicks in and bars his civil suit."  *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).  Accordingly, the Court finds that Mr. Ebeyer is barred from challenging the validity of his arrest

and subsequent conviction as retaliatory and therefore grants summary judgment in favor of Defendants on this claim.

Even if *Heck* did not bar Mr. Ebeyer's claim, Defendants would still be entitled to summary judgment. Because Defendants have raised the defense of qualified immunity, it is Mr. Ebeyer's burden to establish that a clearly established constitutional right was violated on the facts alleged, and that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 201-02. Claiming only that "but for" his attorney's advice, he would continue speaking out at GPD, Mr. Ebeyer has failed to make such a showing here. Defendants are therefore entitled to summary judgment on Mr. Ebeyer's First Amendment claim even without the bar to recovery imposed by *Heck*.

### 2. Fourth Amendment Claim

Mr. Ebeyer also claims that Defendants violated his Fourth Amendment rights by unlawfully seizing him. Defendants argue that Mr. Ebeyer's arrest was lawful, and his claim to the contrary is barred by *Heck*.

The Fourth Amendment to the United States Constitution protects citizens from unlawful searches and seizures. U.S. Const. Amend. IV. Here, Mr. Ebeyer has not specified what conduct by Defendants constituted an unreasonable seizure. To the extent that Mr. Ebeyer challenges his arrest, Defendants are correct in asserting that Mr. Ebeyer's claim is barred however by *Heck* – the only "seizure" the officers conducted was Mr. Ebeyer's arrest, and that arrest has been deemed lawful, eventually resulting in Mr. Ebeyer's conviction.

Mr. Ebeyer's entire response to Defendants summary judgment motion on this issue is as follows:

> Theodore Ebeyer was unlawfully seized when he was arrested without a warrant, which
> is undisputed, and without probable cause. Britnee has testified that she and Rodriquez

15

[sic] hatched a scheme where Theodore was told that he was driving Britnee to pick up drugs for Ryan Huffman. He'd been told by Rodriquez [sic] the night before that Britnee was needed by him to aid an investigation. Therefore, if Britnee is to be believed, [sic] is a question for the jury to decide, and Ebeyer's other evidence of bias against him is accepted, [sic] a reasonable jury could render a verdict in his favor. Summary judgment should be denied on this issue.

[Dkt. 89 at 19.] As the Court explained earlier, Mr. Ebeyer is barred from making allegations, such as these, that are inconsistent with his conviction's having been valid. *Okoro*, 324 F.3d at 490. Therefore, the Court grants summary judgment to the Defendants on Mr. Ebeyer's Fourth Amendment claim.

### 3. Fourteenth Amendment Claim

Lastly, Mr. Ebeyer claims that Defendants violated his right to due process under the Fourteenth Amendment. Defendants argue in response that this claim, like Mr. Ebeyer's other claims, is barred under *Heck*.

The Due Process Clause of the Fourteenth Amendment provides that the government shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Here, Mr. Ebeyer contends that he "was arrested, charged, prosecuted, and sentenced as a result of [Defendants'] deliberate acts." [Dkt. 89 at 20.] He further contends that "[] Rodriquez [sic] cooked up a scheme with Britnee Ebeyer to have him caught with drugs he did not intend to personally possess" and that "this was an effort to punish a man whose only crime was to be a pesky annoyance to [GPD]." [*Id*.]

As stated above, any argument by Mr. Ebeyer challenging the validity of his conviction is unavailing in light of the Supreme Court's holding in *Heck*. 512 U.S. at 486-487. Mr. Ebeyer is barred from making allegations, such as these, that are inconsistent with his conviction's having been valid. *Okoro*, 324 F.3d at 490. Accordingly, the Court denies Defendants' motion for summary judgment on this claim.

**IV.**
**CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion.  [Dkt. 78.]  All Defendants are entitled to summary judgment on all of Plaintiff Theodore Ebeyer's claims.  Defendant Officers McCorkle, Fillenwarth, and Kelly are also entitled to summary judgment on all of Plaintiff Britnee Ebeyer's claims.  However, genuine disputes of material fact exist concerning the nature and circumstances of Britnee's detention in Officer Rodriguez's police car.  Those disputes preclude both a grant of summary judgment and a finding of qualified immunity.  Therefore, Britnee's Fourth Amendment and battery claims against Officer Rodriguez survive for trial.   No partial judgment shall issue.

11/15/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

<u>**Distribution via ECF only**</u>:

Aimee Rivera Cole
SMITH FISHER MAAS & HOWARD
arivera@smithfisher.com

Donna Hilton Fisher
SMITH FISHER MAAS & HOWARD
dfisher@smithfisher.com

Rebecca Jean Maas
SMITH FISHER MAAS & HOWARD
rmaas@smithfisher.com

Kevin  McShane
kmcshane52@hotmail.com